IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LONIE M. MCDONALD, | ) | CIVIL ACTION NO. 3:13-181 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| APPLETON PAPERS INC. RETIREMENT PLAN, *and* KERRY ARENT, PLAN ADMINISTRATOR, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

Currently pending in this case are cross-motions for summary judgment (ECF Nos. 25, 28).  The parties' motions present a single issue for this Court to decide:  whether the Defendants, Appleton Papers Inc. Retirement Plan and the Plan Administrator, Kerry Arent, abused their discretion in denying Plaintiff Lonie McDonald's claim for total and permanent disability under the Retirement Plan.  The Court finds that Defendants did not abuse their discretion.  Accordingly, and for the reasons stated below, the Court will **DENY** Plaintiff's motion for summary judgment (ECF No. 25) and will **GRANT** Defendants' motion for summary judgment (ECF No. 28).

**II.  Jurisdiction and Venue**

The Court has jurisdiction over this matter pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and (e)(1).  Venue is proper under 29 U.S.C. § 1132(e)(2).

**III.    Background**

This case involves the denial of Plaintiff's claim for benefits for total and permanent disability under the Appleton Papers Inc. Retirement Plan, which is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA").  The following facts are not in dispute.

Plaintiff was an employee with Appleton Papers Inc. for 29 years, working as a machine room worker in Appleton Papers' Roaring Spring production facility.  (ECF No. 31 at 124).  Plaintiff's employment with Appleton Papers ended in June 2010, after Plaintiff and Appleton Papers entered a compromise and release agreement related to Plaintiff's claim for workers' compensation benefits.  (*Id.*).

Appleton Papers maintains a Retirement Plan, subject to ERISA, for eligible, former employees.  (*Id.* at 333-472).  Based on Plaintiff's employment with Appleton Papers, she became a Plan participant, pursuant to the special provisions supplement applicable to the employees of the Appleton Papers' Roaring Spring facility.  (*Id.* at 438-47).  As a Plan participant, Plaintiff is eligible to receive vested pension benefits under the terms of the Plan.  (*Id.* at 438-47).  Among other benefits, the Plan provides a benefit for "Total and Permanent Disability," subject to certain eligibility requirements.  (*Id.* at 445).

Under the Plan, the Vice President of Human Resources—Kerry Arent—serves as the Administrative Named Fiduciary and is thus the Plan Administrator.  (*Id.* at 382).  The Plan provides the Plan Administrator with "the power (and . . . discretion with respect to such power) . . . to construe all terms, provisions, conditions and limitations of the Plan; . . . [and] to determine all questions arising out of or in connection with the provisions of

the Plan or its administration in any and all cases." (*Id.* at 382-83). Likewise, the Plan Administrator has the authority to "control and manage the operation and administration of the Plan," and the Plan Administrator's decisions and actions are "conclusive and binding upon all parties concerned." (*Id.* at 382).

In May 2005, Plaintiff began losing her voice, which developed into a persistent voice impairment that continues to inhibit her ability to speak. (*Id.* at 58, 78-80, 127-28). Plaintiff sought various courses of treatment and was diagnosed with dysphonia. (*Id.* at 127-28, 179). Plaintiff continued to work at Appleton Papers following the onset of her impairment. (*Id.* at 326).

On June 8, 2006, while working at the Appleton Papers' Roaring Spring facility, Plaintiff fell from a six-foot high catwalk and sustained a laceration on her forehead and a right shoulder injury. (*Id.* at 128, 244). X-rays taken immediately after the fall showed that Plaintiff had not suffered any fractures. (*Id.* at 89, 244). Following her fall, Plaintiff stopped working for several months and underwent physical therapy. (*Id.* at 128, 244). Plaintiff returned to work in April 2007, but continued to suffer pain and a decreased range of motion. (*Id.* at 128). Following an MRI in May 2008, Plaintiff was diagnosed with a right shoulder subacromial impingement, rotator cuff tear, and bicep tendon tear, requiring arthroscopic surgery. (*Id.* at 128, 151). In connection with her surgery, Plaintiff again stopped working and underwent physical therapy. (*Id.* at 155). Eventually, Plaintiff filed a workers' compensation claim related to her shoulder injury. (*Id.* at 12-30). The parties reached a settlement and entered a compromise and release agreement, ending Plaintiff's employment with Appleton Papers in June 2010. (*Id.* at 12-30).

In March 2009, Plaintiff applied for social security disability benefits. After Plaintiff provided relevant documentation (*Id.* at 206-17), the Social Security Administration granted Plaintiff's application for disability benefits in September 2009. (*Id.* at 221-24).

Plaintiff then applied for total and permanent disability benefits under the Appleton Papers Retirement Plan. Plaintiff's claim was denied, as explained in a letter from Defendant Kerry Arent, the Plan Administrator, on October 25, 2010. (*Id.* at 37). According to the letter, based on a review of Plaintiff's medical records by Dr. Harrison—Appleton Paper's Corporate Medical Director—Plaintiff had not provided sufficient evidence to establish that she was both wholly and permanently prevented from engaging in any occupation or employment as required by the Plan, and thus was not entitled to the requested benefits. (*Id.* at 37). Plaintiff appealed Defendants' decision to deny the disability benefits on December 3, 2010. (*Id.* at 38). On December 22, 2010, the Plan Administrator confirmed the denial of the disability benefits, explaining that, based on a review of the medical records provided, Plaintiff was not "wholly" disabled within the meaning of the Plan. (*Id.* at 41).

On August 15, 2011, in a letter to Plaintiff's attorney, the Plan Administrator stated that Plaintiff had exhausted all of her appeal opportunities under the Plan, and that the decision to deny the requested benefits was final. (*Id.* at 43). Nevertheless, the Retirement Plan's Benefit Finance Committee agreed to again review Plaintiff's request for disability benefits. (*Id.* at 323). After reviewing the evidence submitted, the Committee upheld the denial of Plaintiff's claim in a letter dated September 26, 2012. (*Id.* at 323-27).

4

Having fully exhausted her appeal rights under the Plan, Plaintiff filed a complaint (ECF No. 1) in this Court on August 14, 2013. Defendants filed an answer (ECF No. 16) on October 22, 2013. On February 21, 2014, the parties filed cross-motions for summary judgment (ECF Nos. 25, 28), along with briefs in support (ECF Nos. 26, 29), concise statements of material facts (ECF Nos. 27, 30), and a joint appendix of documents (ECF No. 31). Thereafter, the parties filed responsive submissions. (ECF Nos. 32, 33, 34). This matter is fully briefed and is ripe for disposition.

IV. **Legal Standards**

A. **Summary Judgment**

Summary judgment is appropriate only where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'"

5

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (*quoting Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

### B.     ERISA Standard of Review

Plaintiff seeks review of Defendants' denial of her claim for total and permanent disability benefits under the Retirement Plan. ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). While ERISA does not specify the standard of review that a trial court should apply in an action for wrongful denial of benefits, the Supreme Court has directed that "a denial of benefits challenge under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or

fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Thus, when an employee benefit plan grants discretionary authority to a plan administrator, a court must apply the deferential standard of arbitrary and capriciousness. *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012). In the instant case, the parties agree that the Retirement Plan grants the Plan Administrator discretionary authority, warranting application of the deferential standard of review. (ECF No. 26 at 4; ECF No. 29 at 12-14).

Under the arbitrary and capricious standard of review, the Court may overturn the Plan Administrator's decision only if "it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (citations and quotations omitted); *see also Sutley v. Int'l Paper Co.*, No. 07-cv-105, 2009 WL 703555, at *7 (W.D. Pa. Mar. 16, 2009) (noting that under the arbitrary and capricious standard, a court may overturn a plan administrator's decision "only where it is clearly unsupported by the evidence or where the administrator failed to comply with the procedures required by the plan"). "A decision is supported by 'substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision.'" *Courson v. Bert Bell NFL Player Retirement Plan*, 214 F.3d 136, 142 (3d Cir. 2000) (quoting *Daniels v. Anchor Hocking Corp.*, 758 F. Supp. 326, 331 (W.D. Pa. 1991)). "Under this narrow standard, the reviewing court is not free to substitute its own judgment for that of the plan administrator." *Berkoben v Aetna Life Ins. Co.*, No. 2:12-cv-1677, 2014 WL 1235915 (W.D. Pa. Mar. 25, 2014) (citing *Vitale v. Latrobe Area Hosp.*, 420 F.3d 278, 286 (3d Cir. 2005)); *see also Abnathya v. Hoffman–LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (noting a

7

court may "overturn a decision of the Plan Administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law," and explaining "the Court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits").

In determining whether a Plan Administrator's denial of benefits was arbitrary and capricious, the Court may consider only the "evidence that was before the administrator when he made the decision being reviewed." *Fleisher*, 679 F.3d at 121 (quoting *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997)). Plaintiff has the burden of proving that the Plan Administrator's decision to deny benefits is arbitrary and capricious. *Brandeburg v. Corning Inc. Pension Plan For Hourly Employees*, No. 04-cv-1314, 2006 WL 2136481, at *1 (W.D. Pa. July 28, 2006) *aff'd*, 243 F. App'x 671 (3d Cir. 2007). In accordance with these principles, the Court will apply a deferential arbitrary and capricious standard in reviewing Defendants' denial of Plaintiff's claim for total and permanent disability benefits under the Retirement Plan. *See Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525-26 (3d Cir. 2009).

## V.    Discussion

At issue is whether Defendants abused their discretion in denying Plaintiff's claim for total and permanent disability benefits under the applicable terms of the Retirement Plan. The "Total and Permanent Disability Benefit" provision of the Plan imposes the following eligibility requirements for disability benefits:

> (2) <u>Eligibility Requirements</u>.  A Participant shall be eligible for Total and Permanent Disability benefit payments from the Plan upon meeting all the

following requirements for "Total and Permanent Disability" for purposes of this Section 2.08(f):

(A) The Participant has not retired under any other provision of this Plan;

(B) The Participant has 10 or more years of Benefit Service;

(C) The Participant, on the basis of medical evidence satisfactory to the Company, is found to be both wholly and permanently prevented from engaging in any occupation or employment for wage or profit as a result of bodily injury or disease, either occupation or non-occupational in cause, but excluding disabilities resulting from service in the armed forces of any country (which shall be the definition of the term "Disability" for purposes of this Section H2.08(f)); and

(D) The Participant's Termination of Employment with the Company is on account of the Participant's Disability.

(Retirement Plan, Supp. H-8, Section 2.08(f)(2); ECF No. 31 at 445). Relevant here, the Plan requires Plaintiff to submit "medical evidence satisfactory" to Appleton Papers establishing that Plaintiff is "both wholly and permanently prevented from engaging in any occupation or employment for wage or profit as a result of bodily injury or disease." (*Id*.). Thus, Plaintiff bears the burden of establishing with satisfactory medical evidence that her claimed disability is both permanent and prevents her from performing any type of work.

Plaintiff contends that she is permanently and wholly disabled under the terms of the Plan and that the Defendants abused their discretion in denying her requested disability benefits under the Plan, based on the medical evidence she provided. (ECF No. 26 at 4-5). According to Plaintiff, "she cannot perform any job . . . based upon her physical limitations [related to her shoulder injury] and her limitations in her ability to communicate, as caused by her dysphonia, when considered as a whole." (*Id*. at 5). In her

9

brief, Plaintiff explains that she submitted evidence of the following to Defendants in support of her claim for total and permanent disability benefits: (1) medical evidence, including the Report of Dr. Michael R. Greenberg, related to Plaintiff's shoulder injury sustained while at work; (2) medical evidence related to Plaintiff's diagnosis of spasmodic dysphonia; and (3) evidence related to Plaintiff's receiving Social Security disability benefits. (*Id.* at 4). Plaintiff asserts that this evidence, considered together, shows that she is unable to perform any job.

However, in reviewing the evidence submitted by Plaintiff and applying the eligibility requirements of the Plan, Defendants determined that Plaintiff did not establish with satisfactory medical evidence that she was totally and permanently disabled. Defendants concede that "Plaintiff submitted some evidence in support of her claim," but argue that Plaintiff's evidence "was not so strong as to require the Plan to ignore the contrary evidence in the record." (ECF No. 29 at 16). The Court agrees and, as explained below, will uphold Defendants' exercise of discretion in determining that Plaintiff was not totally and permanently disabled.

In August 2010, Plaintiff applied for total and permanent disability benefits under the Appleton Papers Retirement Plan. The Plan Administrator submitted Plaintiff's request for benefits to Appleton Papers' Medical Director, Dr. Brian Harrison, for a recommendation concerning whether Plaintiff met the definition of disability under the terms of the Plan. (ECF No. 31 at 32). Dr. Harrison concluded that based on the limited medical records presented, Plaintiff's "condition certainly does NOT cause disability meeting the standard in the pension plan." (*Id.*). However, Dr. Harrison recommended

that Plaintiff provide additional medical records supporting her alleged disabling conditions so that further evaluation of Plaintiff's claim could be conducted. (*Id.* at 32, 36). However, without receiving any further medical records from Plaintiff, and on the recommendation of Dr. Harrison, the Plan Administrator denied Plaintiff's request for disability benefits on October 25, 2010. (*Id.* at 37). Specifically, the Plan Administrator concluded that the medical records provided by Plaintiff did not establish evidence that she was "wholly and permanently prevented from engaging in any occupation or employment." (*Id.*). The Plan Administrator advised Plaintiff that, if she provided further medical evidence in support of her claim for disability benefits, the Plan would reconsider her application. (*Id.*).

Then, on December 3, 2010, Plaintiff appealed the Plan Administrator's denial of benefits. (*Id.* at 38). In support of her appeal, Plaintiff submitted various medical records to the Plan Administrator, related to both her dysphonia and her shoulder injuries, for review by Defendants in determining Plaintiff's eligibility for total and permanent disability benefits. (*Id.*). The Plan Administrator again presented Plaintiff's medical records and evidence to Dr. Harrison for his review and recommendation. (*Id.* at 39). Dr. Harrison again concluded that Plaintiff's "records do not support the claim that she could not find employment given her limitations." (*Id.*). Importantly, Dr. Harrison noted that, with regard to Plaintiff's shoulder injury,

> [Plaintiff's records] include a statement by her own orthopedist that she could perform sedentary duty. That statement indicates she does not have disability from "any occupation or employment." In other words, it means she has the ability to perform at least sedentary duty. It indicates that she is not "wholly" disabled. This partial orthopedic disability has permanency, however.

(*Id.*). Likewise, regarding Plaintiff's evidence related to her dysphonia, Dr. Harrison explained that none of Plaintiff's treating physicians "made any statement that [Plaintiff's dysphonia] causes a disability . . . [and] even if it did cause disability, such may not have permanency." (*Id.*). Thus, upon a review of the medical evidence submitted by Plaintiff and relying on Dr. Harrison's recommendation, the Plan Administrator again denied Plaintiff's claim for disability benefits under the Plan on December 22, 2010. (*Id.* at 41).

Thereafter, on July 27, 2012, Plaintiff, through a letter from her attorney, again asked the Plan Administrator to reconsider Plaintiff's claim for disability benefits. (*Id.* at 47). Attached to her letter, Plaintiff submitted additional medical records that had not been previously submitted (*id.* at 48-49), including a report from Dr. Michael Greenberg, who had conducted a review of Plaintiff's medical records and concluded that Plaintiff was "both wholly and permanently prevented from engaging in any occupation or employment." (*Id.* at 129). In response, the Plan treated Plaintiff's letter as an appeal of the Plan Administrator's denial of benefits, and elected to treat the appeal as timely, despite the fact that Plaintiff had failed to comply with the 90-day appeal deadline, which had elapsed on March 22, 2011. (*Id.* at 323). The matter was referred to the Benefit Finance Committee ("Committee"), a named fiduciary of the Plan, for an independent review. (*Id.* at 324). The Committee fully reviewed the evidence provided by Plaintiff without affording any deference to the Plan Administrator's initial adverse benefit determination. (*Id.*). In conducting its review, the Committee submitted Plaintiff's medical records to Dr. Constantine Dumas for an independent medical review. (*Id.* at 324, 54-55). Dr. Dumas provided a written report containing her opinion concerning Plaintiff's

eligibility for total and permanent benefits under the terms of the Plan. (*Id.* at 328-31). After concluding its review, the Committee determined that Plaintiff's condition did not meet the requirements for total and permanent disability benefits under the Plan and upheld the denial of Plaintiff's claim. (*Id.* at 326).

The Court has reviewed the evidence in the record that was before the Plan and finds that the record contained sufficient evidence to support the Plan's conclusion that Plaintiff was not totally and permanently disabled under the terms of the Plan. Defendants do not dispute that Plaintiff's injuries are permanent. (ECF No. 33 at 2). Indeed, Defendants concede that, as noted by Dr. Dumas in his written medical opinion, Plaintiff "does have a degree of permanent disability." (ECF No. 31 at 330, ECF No. 33 at 3). However, Defendants argue that the permanency of Plaintiff's injuries is insufficient to qualify for the requested benefits under the Plan. Instead, as Defendants explain, Plaintiff's disability must also be "total," meaning that her injuries must prevent her "from working any job, anywhere, for any wage." (ECF No. 33 at 3).

The Committee relied on the conclusions of Dr. Dumas, "an occupational medicine specialist who is board certified in occupational and environmental medicine." (ECF No. 31 at 324). In constructing her opinion, Dr. Dumas reviewed "[o]ne and a half inches of medical records" that had been provided by Plaintiff. (*Id.* at 328). Based on these medical records, Dr. Dumas identified three medical diagnoses contributing to Plaintiff's disability: (1) a right shoulder injury sustained as a result of Plaintiff's fall at work, (2) a left shoulder impingement, and (3) dysphonia. (*Id.* at 329). In assessing these three

medical diagnoses, Dr. Dumas also evaluated the restrictions and limitations placed on Plaintiff by her treating physicians as a result of the various diagnoses.

Regarding the right shoulder injury, Dr. Dumas noted that, following surgical repair of the shoulder, Dr. Rodosky, Plaintiff's surgeon, documented that Plaintiff had reached her maximal medical improvement on March 18, 2009, and assigned permanent restrictions, including sedentary duty, no repetitive work, and no overhead work. (*Id.* at 329). Following an independent medical evaluation in September 2009, Dr. Saltzburg concluded that Plaintiff could lift 35 pounds from her waist to her shoulder without difficulty and recommended that Plaintiff "initiate full duty working with appropriate job description at the medium level up to 35 pounds." (*Id.* at 329).

Regarding Plaintiff's left shoulder impingement, Dr. Dumas noted that Dr. Rodosky evaluated Plaintiff, administered a cortisone injection, and prescribed physical therapy. (*Id.* at 329). Dr. Dumas also noted that, apart from the restrictions related to Plaintiff's right shoulder injury listed above, no restrictions or treatment plan were prescribed for the left shoulder impingement. (*Id.* at 329).

Regarding Plaintiff's dysphonia diagnosis, Dr. Dumas noted that the dysphonia had been an ongoing issue since 2005 and that Plaintiff had undergone a variety of treatments. (*Id.* at 329). Dr. Dumas also noted that Plaintiff was evaluated by Dr. Rasefske on August 6, 2009, who described her dysphonia as "a voice disorder characterized by periods of aphonia and hoarse breathy tense strained voice quality." (*Id.* at 329-30).

14

After reviewing all of the medical evidence, Dr. Dumas opined that, while Plaintiff "does have a degree of permanent disability, and may not be able to perform the exact job she performed prior to the development of her permanent disability," Plaintiff was not "wholly and permanently prevented from engaging in any occupation or employment for wage or profit . . ." (*Id.* at 330). Dr. Dumas also reviewed Dr. Greenberg's report dated July 19, 2012, and concluded that "he does not provide a rationale for his conclusion" that Plaintiff was totally and permanently disabled. (*Id.* at 330). To the contrary, Dr. Dumas provided medically relevant examples concerning possible jobs and employment opportunities that would be appropriate for Plaintiff given her documented impairments:

> For example, I have observed production role activities of a quality control nature, where the employee observes a production line. If defects are observed (that typically present infrequently), the operator would simply push a button to stop the line and in some cases may lift small components off the line. Of course, this is only one example and numerous other jobs could be performed with the physical limitations described.

(*Id.* at 330). On the basis of Dr. Dumas's report and in consideration of the Plaintiff's medical records, the Committee upheld the Plan Administrator's denial of Plaintiff's request for disability benefits.

This Court finds that there is sufficient evidence in the record to support the Plan's conclusion that none of Plaintiff's impairments, either individually or taken together as a whole, render Plaintiff totally and permanently disabled under the terms of the Plan. As Dr. Dumas noted, there are a number of jobs that Plaintiff could perform that would not require her to exceed the restrictions related to the weight and movement limitations imposed by her treating physicians.

Likewise, there is simply no evidence that Plaintiff's dysphonia prohibits her from engaging in any job or occupation. Importantly, despite her voice impairment, Plaintiff continued to work at Appleton Papers for almost a year after the onset of her voice impairment. Thus, Plaintiff is evidently capable of performing at least some job duties despite her dysphonia. Also, as Dr. Dumas explained, other forms of communication, such as sign language, are available to enable Plaintiff to communicate despite her impairment. (*Id.* at 330).

Plaintiff relies heavily on Dr. Greenberg's report and argues that the "Plan is required to consider the opinions of Plaintiff's Physician, along with the administrative record as a whole." (ECF No. 32 at 7). When the Plan initially denied Plaintiff's request, Dr. Greenberg had not yet conducted his review of the medical evidence or prepared a report. Furthermore, after Plaintiff appealed the Plan Administrator's initial denial of her request for benefits, the Committee exhaustively considered Dr. Greenberg's report, but found that the report failed "to establish that [Plaintiff's] condition . . . met the definition of Disability under the Plan." (ECF No. 31 at 326). Additionally, the Committee found that other evidence in the record, including the opinions of Plaintiff's treating physicians and the independent medical examiners, presented convincing opinions to the contrary. The fact that the Plan Administrator and Committee relied on the opinions of Dr. Dumas and Dr. Harrison rather than the conclusions of Dr. Greenberg does not render the Plan's decision arbitrary and capricious. *See Brandeburg v. Corning Inc. Pension Plan for Hourly Employees*, 243 Fed. App'x 671, 673 (3d Cir. 2007); *Stratton v. E.I. DuPont De Nemours & Co.*,

363 F.3d 250, 258 (3d Cir. 2004) ("A professional disagreement does not amount to an arbitrary refusal to credit.").

Plaintiff also argues that, while not dispositive, the Social Security Administration's finding that Plaintiff is permanently disabled is evidence that Plaintiff is entitled to the total and permanent disability benefits under the Plan. (ECF No. 26 at 4-5; ECF No. 32 at 7-8). As an initial matter, Plaintiff concedes that the Social Security disability determination "does not go so far as concluding that [Plaintiff] could not perform any job at all, as required by the applicable Plan language." (ECF No. 26 at 5). Indeed, the law is clear, "Social Security determinations are not binding on ERISA plans, and should not have unintended side effects on such plans not contemplated by the parties in initiating the plans, or by Congress in creating the Social Security disability structure." *Pokol v. E.I. du Pont de Nemours & Co.*, 963 F. Supp. 1361, 1379 (D. N.J. 1997) (citation omitted). Furthermore, Plaintiff offers the Social Security Administration's finding of a disability to support her assertion that her disability is permanent. However, Defendants do not dispute that Plaintiff's disability may be permanent. Additionally, while Plaintiff submitted a letter from the Social Security Administration regarding its decision to award disability benefits, Plaintiff did not provide the Plan with the entire record from the Social Security Administration proceedings. Thus, Defendants did not abuse their discretion in reaching a different conclusion from the Social Security Administration regarding Plaintiff's request for disability benefits. *See Elms v. Prudential Ins. Co. of Am.*, No. 06-cv-5127, 2008 WL 4444269, at *20 (E.D. Pa. Oct. 2, 2008) (concluding that because a form letter issued by Social Security Administration granting a disability

request was the only evidence in the record from the SSA, without more, it had "no probative value" regarding the denial of an employee's request for disability benefits under a benefit plan); *Goletz v. Prudential Ins. Co. of Am.*, 383 F. App'x 193, 198 (3d Cir. 2010) (explaining that a plan administrator need not always reconcile its determinations with those of the SSA).

In sum, the record before the Court shows that there is substantial evidence to support Defendants' denial of Plaintiff's request for total and permanent disability benefits. Accordingly, Defendants did not abuse their discretion in denying Plaintiff's request for disability benefits.

**VI.   Conclusion**

The material facts in this case are not in dispute. Viewing the evidence in the light most favorable to Plaintiff, judgment as a matter of law is proper for Defendants. Simply stated, Defendants did not abuse their discretion in concluding that Plaintiff was not totally and permanently disabled under the terms of the Retirement Plan. To the contrary, Defendants' decision is supported by substantial evidence, and thus Defendants did not act arbitrarily and capriciously in denying Plaintiff's request for disability benefits. Accordingly, the Court will grant Defendants' motion for summary judgment (ECF No. 28) and will deny Plaintiff's motion for summary judgment (ECF No. 25).

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LONIE M. MCDONALD, | ) | CIVIL ACTION NO. 3:13-181 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| APPLETON PAPERS INC. RETIREMENT PLAN, *and* KERRY ARENT, PLAN ADMINISTRATOR, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 17th day of September 2014, having considered the pending motions for summary judgment in this case, along with the parties' briefs, supporting exhibits, and other submissions, and in accordance with the foregoing memorandum opinion,

**IT IS HEREBY ORDERED** that Defendants Appleton Papers Inc. Retirement Plan and Kerry Arent's motion for summary judgment (ECF No. 28) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Lonie M. McDonald's motion for summary judgment (ECF No. 25) is **DENIED**.

**IT IS FINALLY ORDERED** that the Clerk of Court shall mark this case closed.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE